## Case No. 15,858.

### UNITED STATES v. NAYLOR.

[19 Law Rep. 449.]

District Court, D. New York. Nov. 19, 1856.

SLAVE TRADE—STATUTES.

History and construction of the statutes in relation to the slave trade. Act March 22, 1794 [1 Stat. 347], is still in force.

At law.

BETTS, District Judge. The defendant was arrested upon capias for a fine and penalty imposed by the act of congress of March 22, 1794 (1 Stat. 349–352), and is held to bail upon the arrest under an order of a judge of the court. He now applies to the court to discharge the arrest and action on the ground that the act of 1794 is no longer in

[1] [Reported by Hon. William Cranch, Chief Judge.]

force. The statute has not been expressly repealed by congress, but the argument insists that the subsequent legislation on the matter amounts to a repeal by implication. A collation of the statutory provisions on the subject will bring the point distinctly to view, and tend to solve the question more satisfactorily than a diffuse dissertation upon the general theme touching the operation of posterior enactments in working a repeal of antecedent ones. The provisions of the act of 1794 relate (1) to the consequences to the ship, directing if the master, factor or owner shall build, equip, load, or otherwise prepare any ship or vessel within the United States, or shall cause her to sail from any port of the United States for the purpose of procuring from any foreign country inhabitants thereof, to be transported to any foreign country, to be sold as slaves, &c., the penalty of forfeiture of the vessel. (2) The punishment of every person "so building, fitting out, equipping, loading, or otherwise preparing or sending away any ship or vessel, knowing or intending that the same shall be employed in such trade or business," penalty $200 fine. Vessels suspected of being intended for the slave trade, required to give bonds on clearing out for the coast of Africa not to receive natives of the coast on board within nine months. A forfeiture imposed of $200 each for all persons taken on board for the purpose of selling them as slaves. The title of the act is "An act to prohibit carrying on of the slave trade from the United States to any foreign place or country." The succeeding act of March 2, 1807 [2 Stat. 426], is entitled "An act to prohibit the importation of slaves into any port or place within the jurisdiction of the United States," &c. The act in ten consecutive sections enacts provisions for enforcing that purpose. The second and third sections adopt the language of the first and second sections of the act of 1794, with the difference that the prohibition in one applies to transporting persons from one foreign place to another, to be held and sold as slaves, and in the other the particular classes of persons are designated, and the prohibition is for causing them to be transported to any place within the United States, to be sold and held as slaves. The penalty upon the ship is the same in each statute, but, on the persons, the fine in the act of 1807 is $20,000.

This statement of the provisions of the two statutes demonstrates that they no way conflict with each other. They look to wholly different objects, and are leveled against distinct offences,—the first acting against the slave trade abroad and applying to the transportation of inhabitants of one foreign country to be sold to slavery in another foreign country, without discrimination of color; and the other being limited to negroes, mulattoes, or persons of color, and the dispatch of vessels from the United States to any foreign port or place for the purpose of pro-

curing such persons to be transported from such foreign country to the United States, to be held to service or labor. The interpretation of the latter act, as operating a repeal of the former, contended for by the defendant, cannot, accordingly, be maintained. The act of April 20, 1818 [3 Stat. 450], is entitled "An act to prohibit the introduction (importation) of slaves into any port or place within the jurisdiction of the United States, &c., and to repeal certain parts of the same," and by the tenth section the first six sections of the act of 1807 are repealed. Within those repealed sections are included the provisions above adverted to, and it is manifest that, inasmuch as they did not when in force affect the enactments in the act of 1794 upon a correlative subject, their absolute repeal can have no legal bearing upon those enactments. Congress framed the two statutes diverso intuitu, the one in relation to the foreign slave trade, and the other to the domestic. The act of 1818, as its title denotes, has exclusive reference to the importation of slaves into the United States. It goes beyond the repealed act of 1807, in embracing foreign vessels in the interdiction, but it introduces no description of offences which are prohibited by the act of 1794. Its enactments may be so directly in pari materia with those included in the repealed sections of the act of 1807, as to amount to an implied repeal of those provisions, if no express repeal had been declared, but as before shown, the existence or removal of the act of 1807 no way touches the act of 1794, in the particulars in question.

It is to be observed that there is a further radical distinction, between the enactments on this subject in both the preceding acts. The offence therein created and described, upon which the pecuniary punishment was to be inflicted, was the fitting out or sending away a vessel, "knowing or intending that she should be employed" in such trade or business. But in the act of 1818 the offence consists in fitting out or sending away the vessel, or procuring it to be done, "with intent to employ such ship or vessel in such trade or business." The distinction between these transactions is palpable. The guilt of the one is equipping or sending away a vessel for the purpose of enabling third persons to employ her in the forbidden traffic; and of the other, the immediate and personal participation in the crime by the party accused, —fitting out or sending away the vessel with intent to employ her in the illicit trade. The supreme court regards this distinction as cardinal, and holds that the two phrases are not convertible in a true interpretation of the act of congress. U. S. v. Gooding, 12 Wheat. [25 U. S.] 460. I am, therefore, of opinion that the act of congress of March 22, 1794 (section 2), upon which this action is founded, remains in full force.

The motions on the part of the defendant are accordingly denied.